**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**JAMES LEONARD ANTHONY,
and DORIS JEAN ANTHONY,
on behalf of themselves and a class of
others similarly situated,**

          Plaintiff,

v.                                 Civil Action No.:  2:26-cv-00447
                                      Judge:

**PEOPLES CARTAGE, INC., a foreign corporation, and
TOTAL DISTRIBUTION, INC., a foreign corporation,**

          Defendants.

## CLASS ACTION COMPLAINT

Plaintiffs James Leonard Anthony, and Doris Jean Anthony, individually and on behalf of all others similarly situated, brings this civil action against Defendants Peoples Cartage, Inc. ("Peoples Cartage") and Total Distribution, Inc. ("Total Distribution") (collectively, "Defendants"), for personal injury and property damages arising from a warehouse fire and resulting toxic smoke at Defendants' facility on Camden Avenue in Parkersburg, Wood County, West Virginia. The fire began on or about Saturday, July 4, 2026, was apparently believed to be extinguished, but instead continued to burn and/or reignited in the early morning hours of Sunday, July 5, 2026, engulfing the facility in flames and massive plumes of thick black smoke that have continued to affect residents, businesses, and property in the surrounding area.

In support of their Complaint, Plaintiffs allege as follows:

**PARTIES**

1. Plaintiff James Leonard Anthony resides at 2301 Pennsylvania Avenue, Parkersburg, Wood County, West Virginia, and is a citizen of the State of West Virginia.

2. Plaintiff Doris Jean Anthony resides at 2301 Pennsylvania Avenue, Parkersburg, Wood County, West Virginia, and is a citizen of the State of West Virginia.

3. The proposed class consists of all lawful residents, business operators, and property owners or possessors near the Camden Avenue facility — the area subject to the shelter-in-place order described below — and/or within the broader area affected by smoke, ash, soot, or other particulate matter emanating from the fire beginning on or about July 4, 2026. The precise geographic boundary of the class remains subject to refinement following discovery and any necessary expert modeling of the smoke plume and affected area. Excluded from the proposed class are Defendants' employees and associates, judicial officers and court staff assigned to this case, counsel for the parties in this case, and persons who choose to be excluded from the class at the appropriate time.

4. Defendant Peoples Cartage, Inc. ("Peoples Cartage") is, upon information and belief, a foreign corporation authorized to do, and doing, business in West Virginia, and was at all relevant times the operator of the warehouse facility on Camden Avenue in Parkersburg, Wood County, West Virginia, that is the subject of this action.

5. Defendant Total Distribution, Inc. ("Total Distribution") is, upon information and belief, a foreign corporation authorized to do, and doing, business in West Virginia, and is the parent company of Peoples Cartage. Total Distribution acquired Peoples Cartage, including the

2

Camden Avenue facility and a sister facility at 221 Airport Industrial Park near the Mid-Ohio Valley Regional Airport in Wood County, in 2024.

6. Upon information and belief, Total Distribution exercises centralized control over safety, quality, and regulatory compliance functions at facilities operated by Peoples Cartage and its affiliates, including the Camden Avenue facility, through corporate personnel such as its Senior Director of Safety, Quality, and Regulatory Compliance.

7. Upon information and belief, Total Distribution and/or its affiliates own and operate additional facilities in West Virginia, including a Peoples Cartage facility on Rosemary Road in Vienna, two facilities in Nitro, Kanawha County, and facilities in Huntington and Kenova, Cabell County.

## JURISDICTION AND VENUE

8. The original jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §1332, as Plaintiffs are residents of West Virginia and all Defendants are residents of Ohio.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

10. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The proposed Class consist[s] of more than 100 members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity exists because at least one member of the proposed Class is a citizen of a State different from at least one Defendant: Plaintiffs are citizens of West Virginia, while Defendants are citizens of Ohio and is incorporated in West Virginia

3

with its principal place of business in Ohio. None of the exceptions to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(3)–(5) applies, and no primary defendant is a State, State official, or other governmental entity against whom the Court may be foreclosed from ordering relief.

## STATEMENT OF FACTS

### The Camden Avenue Fire

11. On or about Saturday, July 4, 2026, at approximately 10:40 a.m., a fire broke out in one of the storage boxes at Peoples Cartage's Camden Avenue warehouse campus in Parkersburg, Wood County, West Virginia. The cause of that initial fire remains under investigation.

12. Upon information and belief, the Camden Avenue facility was used to store plastic pellets, a raw material used in the manufacture of plastic products. The pellets were stored in boxes measuring approximately four feet by four feet, stacked as much as sixteen feet deep in portions of the warehouse.

13. Upon information and belief, the facility's fire suppression (sprinkler) system activated and, in conjunction with the response of the local fire department, was believed to have contained the initial fire on July 4, 2026.

14. Further, upon information and belief, the Defendants' fire suppression sprinkler system was shut off following the initial July 4, 2026 fire. It has been reported that the Defendants shut off the sprinkler system because it was soaking additional boxes of stored material and there was a concern that the wet boxes, which were piled up to 16 feet high within the warehouse, would collapse, creating a hazard to persons working inside the building.  No

back up system was in place when Defendants shut off the fire containment system on July 4, 2026.

15. Upon information and belief, following the initial July 4, 2026 fire, the Defendants undertook to have the sprinkler heads that had activated during the initial fire replaced and the suppression system restored, taking the suppression sprinkler system offline without a sufficiently safe alternative in place. Instead, the Defendants apparently initiated what was described as a "fire watch" while the sprinkler system was offline.

16. Upon information and belief, at approximately 5:30 a.m. on Sunday, July 5, 2026 — before the sprinkler system had been restored to full operation — Peoples Cartage employees or agents were removing and opening boxes that were damaged by the July 4, 2026 fire. As one such box was opened and its contents exposed to the air, it ignited, and the fire spread rapidly thereafter, engulfing the facility in flames and thick black smoke. Multiple news and media outlets reported on the fire and the massive cloud of black smoke created by it.[1]

17. For example, reports made by WOWK 13 News included the following photograph evidencing the massive scale of the fire and the thick, black smoke emitting therefrom:

---

[1] *See e.g.*: https://www.wowktv.com/news/west-virginia/wood-county-wv/gov-morrisey-visiting-site-of-parkersburg-warehouse-fire/

5



18. Upon information and belief, the fire on July 5, 2026 was allowed to spread rapidly due to Peoples Cartage employees or agents having turned off the fire suppression sprinkler system, despite experiencing a fire the previous day and despite the presence of large amounts of highly combustible material, some of which required only exposure to the air to combust, as well as material which is highly toxic to humans when burned, inhaled and ingested.

19. Agents and employees of Peoples Cartage had ample notice that the facility carried an elevated risk of fire. They knew the chemical compounds stored there were extraordinarily volatile and combustible. They knew that cleaning up after the initial fire would require moving those chemical compounds, agitating and disturbing substances that could ignite upon contact with the air. And they knew that anyone exposed to the smoke, ash, soot, and other chemical byproducts of those burning chemicals faced a grave risk of acute injury or lasting harm to persons and property. Despite having knowledge of these extreme risks,

agents and employees of Peoples Cartage carried on with business as usual, operating the facility without any adequate fire safety or containment system in place.

20. The reignited fire required a prolonged, multi-agency emergency response. The Lubeck Volunteer Fire Department served as the initial incident command. The local municipal water system was drained during the initial response, requiring water to be shuttled to the scene by a fleet of approximately thirty fire tanker trucks. An industrial firefighting service was subsequently brought in from Pittsburgh, Pennsylvania, and established a supplemental water line from the Little Kanawha River, through which firefighters pumped approximately 9,000 gallons of water per minute onto the fire. Response personnel anticipated that extinguishing the fire, including excavating and dousing material stacked as much as sixteen feet deep within the collapsed structure, would take several additional days.

21. The West Virginia Department of Environmental Protection ("WVDEP") conducted air monitoring in the vicinity of the fire as a result of the smoke and particulate matter released into the atmosphere. Beginning on or about Sunday, July 5, 2026, the WVDEP used five-gas meters to monitor for carbon monoxide, hydrogen sulfide, volatile organic compounds, oxygen, and lower explosive limits.

22. The WVDEP requested air monitoring assistance from U.S. EPA Region 3, which arrived on-site the afternoon of July 5, 2026. The WVDEP and EPA jointly deployed air monitors for smoke-related particulate matter, as well as five additional monitors for volatile organic compounds.

23. As a result of the fire and ongoing air quality concerns, on July 4, 2026, a shelter-in-place order was issued for residents in the area of Defendants' Camden Avenue facility. The WVDEP reported that a smoke-related air monitor located at a campground north of the facility showed signs of elevated levels of particulate matter. Air monitoring has continued in the days since.

24. The shelter-in-place order was lifted at approximately 2:00 PM on July 7, 2026.

25. As a result of the fire and the resulting smoke, ash, and particulate matter, Plaintiffs and the proposed class have suffered damages including, but not limited to, interference with the use and enjoyment of their property, property contamination requiring clean-up, compliance with shelter-in-place orders, and respiratory and other health effects, and potential long term health impacts, as more fully described below.

**Defendants' Prior Notice of Fire Risk at Affiliated Facilities and History of Violations**

26. Upon information and belief, Defendants had actual and constructive notice, well before the July 2026 fire, that facilities under common ownership and management with the Camden Avenue site presented a recurring, foreseeable risk of fire involving the storage and handling of hazardous, volatile, and combustible materials.

27. Specifically, on or about July 4, 2020, a fire occurred at the Airport Industrial Park facility in Wood County, then owned by REO Processing West Virginia, involving containers of calcium hypochlorite, a granular chlorine compound used in swimming pool treatment and municipal water disinfection commonly known as "bleaching powder". Calcium hypochlorite is an oxidizing agent, increasing the intensity of existing fires or increasing the combustibility of other chemical compounds. Following that fire, the containers were

8

relocated outside under a canopy, where a second fire involving the same substance subsequently occurred. These fires resulted in the WVDEP issuing a consent order against the facility's then-owner.

28. In 2024, Defendant Total Distribution acquired the Airport Industrial Park facility, along with the Camden Avenue facility, through its subsidiary Peoples Cartage.

29. On or about March 16, 2025, a fire was reported to the WVDEP Spill Hotline at the Airport Industrial Park facility, recently acquired by Peoples Cartage. A WVDEP inspection the following day confirmed a fire had occurred in a hazardous waste storage building where ignitable calcium hypochlorite floor sweepings were accumulated, the same chemical that caused the 2020 fire at that same location.

30. On or about April 22, 2025, the federal Occupational Safety and Health Administration ("OSHA") notified the Airport Industrial Park facility of an alleged workplace hazard involving the failure to provide appropriately sized personal protective equipment, including Tyvek suits for employees handling chlorine tablets, and directed the facility to investigate and report corrective actions.

31. In response to their findings on their March 17, 2025 inspection, the WVDEP cited the Airport Industrial Park facility for five violations of federal and state hazardous waste law, including: (a) maintaining an open container of hazardous waste in violation of 40 C.F.R. § 262.15; (b) three violations of 40 C.F.R. § 262.16 relating to hazardous waste storage volume and time limits, failure to display required hazardous waste labeling, and failure to "**operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste constituents to the environment**" (emphasis

9

added); and (c) disposing of hazardous waste without a permit, in violation of W. Va. Code § 22-18-8(a).

32. Less than three months later, on or about June 4, 2025, the WVDEP received a report of another calcium hypochlorite fire at the Airport Industrial Park facility, resulting in an inspection the following day. According to the WVDEP's report, the facility stated that an unknown amount of calcium hypochlorite had been released into the atmosphere due to a fire believed to have been caused by a chemical reaction in buckets of "floor sweep" compound, a granular product designed to reduce airborne dust when cleaning floors. The specific contaminant in the "floor sweep" compound which caused the chemical reaction and subsequent fire was unknown to the facility.

33. One day later, on June 5, 2025, WVDEP personnel conducted another inspection of the Airport Industrial Park facility. Inspectors found nearly identical violations as they found on March 16, 2025: a fire had occurred in a hazardous waste storage building where ignitable calcium hypochlorite floor sweepings were accumulated. In response, the WVDEP issued a notice of violation for failure to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to the environment, in violation of  40 CFR 262.16(b)(8)(i); and for disposing of hazardous waste without a permit, in violation of W. Va. Code § 22-18-8(a).

34. In a letter to the WVDEP dated September 23, 2025, Peoples Cartage's Senior Director of Safety, Quality, and Regulatory Compliance, Joseph DeVirgilio, represented that Peoples Cartage had reviewed and updated its waste management plan, trained staff on the updated

requirements, and, with respect to the permitting violation, wired newly constructed waste storage areas with fire alarms.

35. On or about December 15, 2025, the WVDEP's Division of Water and Waste Management issued a Consent Order (Exhibit 1) against the Airport Industrial Park facility arising from the multiple fires involving calcium hypochlorite hazardous waste described above, both before and after Total Distribution's acquisition of the facility and further assessed a civil administrative penalty of $46,380. As part of the corrective action plan, the facility agreed to upgrade its storage infrastructure with poured concrete and to implement thermal scanning to monitor for dangerous heat levels.

36. On another inspection conducted at the Airport Industrial Park facility in March of 2026, the WVDEP issued another violation against Peoples Cartage (Exhibit 2) for failure to appropriately prepare a hazardous waste manifest, in violation of 40 CFR 262.20; failure to notify of their actual generator category, in violation of 40 CFR 262.13; and for failure to report two hazardous wastes on its biennial report, in violation of 40 CFR 262.41(a).

37. The March 2026 inspection further revealed the presence of moisture collecting on the floor in areas where calcium hypochlorite was stored. Calcium hypochlorite, under certain circumstances, can produce highly toxic chlorine gas when put in contact with water or moisture.

38. Despite this documented, repeated history of fires, violations for not having proper fire-preventative mechanisms in place, hazardous waste violations, and safety complaints at a sister facility under common ownership and centralized safety management, Defendants, in clear disregard to the apparent, obvious, and demonstrated fire risks inherent to their

operations, failed to adequately assess, audit, or correct fire risks at the Camden Avenue facility prior to the July 2026 fire.

39. As a proximate result of Defendants' conduct described above, Plaintiffs and the proposed class have suffered economic loss, loss of use and enjoyment of property, annoyance and inconvenience, and, for some class members, personal injury.

### COUNT I
**Negligence**
**(Peoples Cartage & Total Distribution)**

40. Plaintiffs incorporate the allegations set forth above and further states:

41. Defendants owed Plaintiffs and the proposed class a duty to exercise reasonable care in the storage, handling, and maintenance of materials at the Camden Avenue facility, and in maintaining adequate fire prevention, detection, and suppression systems appropriate to the facility's contents and its location in a populated area.

42. Upon information and belief, Total Distribution owed an independent duty of reasonable care to Plaintiffs and the proposed class by virtue of its centralized control over safety, quality, and regulatory compliance functions across facilities operated by Peoples Cartage and its affiliates.

43. Defendants breached their duty of care by, among other things: (a) directing or permitting employees or agents to remove and open boxes of stored highly volatile material that had been affected by the July 4, 2026 fire before the facility's sprinkler system had been restored to full operation, contrary to the fire department's express instruction that doing so was a priority and that a fire watch be maintained until the system was restored; (b)

12

failing to adequately assess and correct fire risks at the Camden Avenue facility in light of the documented history of fires, citations for failure to operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste constituents to the environment, and hazardous materials violations at a nearby affiliated facility; (c) failing to maintain fire suppression and detection systems sufficient to prevent the reignition of the fire; and (d) failing to implement adequate safety protocols across affiliated facilities despite actual notice of recurring fire risk.

44. As a proximate result of Defendants' breach of their duty of care, Plaintiffs and the proposed class have suffered damages including economic loss, property damage, loss of use and enjoyment of property, annoyance and inconvenience, and personal injury.

## COUNT II
### Private Nuisance
### (Peoples Cartage & Total Distribution)

45. Plaintiffs incorporate the allegations set forth above and further states:

46. By causing and/or permitting hazardous chemical substances, vapors, fumes, odors, particulates, contaminants, and emergency conditions to emanate from the facility into the surrounding area, Defendants substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their homes, land, and business premises.

47. The interference was substantial, unreasonable, and offensive to persons of ordinary sensibilities.

48. The interference was substantial, unreasonable, and offensive to persons of ordinary sensibilities.

13

49. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the injuries and damages alleged herein.

## COUNT III
### Trespass
### (Peoples Cartage & Total Distribution)

50. Plaintiffs incorporate the allegations set forth above and further states:

51. Defendants caused or permitted hazardous chemical substances, vapors, fumes, particulates, contaminants, and/or other physical matter to enter onto, invade, or affect Plaintiffs' real and personal property.

52. The invasion was unauthorized and interfered with Plaintiffs' possessory interests in their homes, land, business premises, and personal property.

53. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the injuries and damages alleged herein.

## COUNT IV
### Strict Liability
### (Peoples Cartage & Total Distribution)

54. Plaintiffs incorporate the allegations set forth above and further state:

55. The actions of Defendants constituted abnormally dangerous activities that presented a high degree of risk of some harm to the persons, lands, and chattel of Plaintiffs and other persons in the proposed class.

56. The actions of Defendants presented a high likelihood that the resulting harm would be great.

57. Defendants possessed an inability to eliminate the risk of harm by the exercise of reasonable care.

14

58. Defendants carried on abnormally dangerous activities that are not a matter of common usage.

59. The actions of Defendants were inappropriate for the place in which they were carried on.

60. The extent to which the actions and property of Defendants presented any value to the community are outweighed by their dangerous attributes.

61. As a proximate result of Defendants' actions, Plaintiffs and the proposed class have suffered damages, including economic loss, property damage, loss of use and enjoyment of property, annoyance and inconvenience, and personal injury.

62. Defendants should be held strictly liable for their wrongful conduct because causing a fire, releasing massive plumes of black smoke and other toxic inhalants to nearby residents caused an extremely dangerous condition, subjecting Plaintiffs and the others similarly situated to serious harm.

## COUNT V
### Reckless Conduct — Punitive Damages
### (Peoples Cartage & Total Distribution)

63. Plaintiffs incorporate the allegations set forth above and further states:

64. Punitive damages are appropriate with respect to Counts I and II because Defendants' conduct went beyond ordinary negligence and reflected a conscious, reckless disregard for the safety of Plaintiffs and the proposed class.

65. Specifically, Defendants had actual notice — through multiple fires involving volatile chemicals, WVDEP inspections and violations, including ones for their failure operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste constituents to the environment, a civil penalty, a consent order,

15

and an OSHA complaint, all directed at a facility under common ownership and centralized safety management — that the corporate family's facilities presented a recurring, documented risk of fire involving improperly stored or handled materials.

66. Despite this notice, and despite representations to regulators that corrective action had been taken, Defendants failed to extend any comparable review or corrective measures to the Camden Avenue facility, which suffered a fire that reignited after being reported extinguished — a pattern of inadequate fire protections consistent with the deficiencies previously identified at the affiliated facility.

67. Independent of that historical notice, Defendants' conduct on the morning of July 5, 2026 — directing or permitting workers to remove and open fire-damaged boxes of volatile and combustible material before the sprinkler system had been restored, notwithstanding the fire department's express instruction that restoring the system and maintaining a fire watch were the priority — itself reflects a flagrant, conscious disregard of a known and obvious risk of reignition.

68. This conduct constitutes negligence, and willful, wanton, and reckless conduct, and demonstrated reckless indifference to the health and safety of others, entitling Plaintiffs and the proposed class to an award of punitive damages.

69. As a proximate result of the negligence, and willful, wanton and reckless conduct of Defendants, Plaintiffs and the proposed class have suffered damages, including economic loss, property damage, loss of use and enjoyment of property, annoyance and inconvenience, and personal injury.

16

70. The Defendants' negligence, and willful, wanton and reckless conduct entitles Plaintiffs and the proposed class to an award of punitive damages.

## CLASS ACTION ALLEGATIONS

71. Plaintiffs incorporate the allegations set forth above and further state:

72. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The proposed Class consist[s] of more than 100 members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity exists because at least one member of the proposed Class is a citizen of a State different from at least one Defendant: Plaintiffs are citizens of West Virginia, while Defendants are citizens of Ohio and is incorporated in West Virginia with its principal place of business in Ohio. None of the exceptions to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(3)–(5) applies, and no primary defendant is a State, State official, or other governmental entity against whom the Court may be foreclosed from ordering relief.

73. Pursuant to Federal Rule of Civil Procedure 23, for the following reasons, Plaintiffs propose to serve as class representative for the class defined in paragraph 3, above. Plaintiffs reserve the right to amend the class definition, including through the use of expert modeling of the smoke plume's dispersion area, as in similar cases involving isopleth-defined classes.

74. Ascertainability. The class is ascertainable because it relies on objective criteria — presence within the affected area during a discrete, identifiable event — and is devoid of legal conclusions.

17

75. Numerosity. Upon information and belief, given the scope of the fire and the reported area affected by smoke, the class is likely to consist of a substantial number of residents and businesses such that joinder of all members is impracticable.

76. Commonality. Common questions of law and fact predominate, including: the cause of the fire and its reignition; whether Defendants had notice of fire risks at their facilities; whether Defendants' fire prevention and suppression measures were adequate; the composition and dispersal area of the smoke and particulate matter; and whether Defendants' conduct warrants punitive damages.

77. Typicality. Plaintiffs' claims are typical of the claims of the proposed class members, all of whom were affected by the same fire and smoke event arising from the same conduct by the same Defendants.

78. Adequacy. Plaintiffs have no conflicts of interest with other class members and, together with proposed class counsel, will fairly and adequately represent and protect the interests of the class.

79. Predominance and Superiority. Common questions of law and fact predominate over any individual questions, which relate primarily to the amount of damages suffered by individual class members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy given the number of potentially affected persons and the common nucleus of operative facts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and as proposed class representative, demands judgment against Defendants, jointly and severally, as follows:

A.    That the Court certify the proposed class under Fed. R. CIV. P. 23, appoint Plaintiffs as class representative, and appoint Plaintiffs' counsel as class counsel;

B.    An award of compensatory damages for Plaintiffs and the class, including damages for diminution in property value, loss of use and enjoyment of property, clean-up costs, business losses, and personal injury;

C.    An award of punitive damages;

D.    Pre- and post-judgment interest;

E.    Costs and reasonable attorneys' fees; and

F.    Such other and further relief as the Court deems just and proper.

## PLAINTIFFS DEMAND A TRIAL BY JURY

**James Leonard Anthony, and Doris Jean Anthony, on behalf of themselves and a class of others similarly situated,**

**By Counsel**

*/s/ W. Jesse Forbes*
W. Jesse Forbes, (WV Bar No. 9956)
Jennifer N. Taylor (WV Bar No. 4612)
Michael D. Heidenreich (WV Bar No. 14255)
FORBES LAW OFFICES
1118 Kanawha Blvd., E.
Charleston, West Virginia 25301
Phone: 304-343-4050
Fax: 304-344-7450

wjforbes@forbeslawwv.com
jtaylor@forbeslawwv.com
MDH@forbeslawwv.com


L. Dante diTrapano, Esquire (WV Bar No. 6778)
Alex McLaughlin, Esquire (WV Bar No. 9696)
David Carriger, Esquire (WV Bar No. 7140)
CALWELL LUCE DITRAPANO PLLC
500 Randolph Street
Charleston, West Virginia 25302
304.343.4323
304.344.3684 Facsimile
dditrapano@cldlaw.com
amclaughlin@cldlaw.com
dcarriger@cldlaw.com

Anthony J. Majestro (WVSB 5165)
Graham B. Platz (WVSB 14093)
POWELL & MAJESTRO PLLC
405 Capitol Street, Suite 807
Charleston, WV 25301
Tel: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Bernard E. Layne, III (WV Bar No. 7991)
Jonathan R. Mani (WV Bar No. 8824)
Damon Ellis (WV Bar No. 8802)
MANI ELLIS & LAYNE, PLLC
10 Hale Street, Suite 501
Charleston, WV 25301
(304) 443-5699
jmani@mel-law.com
belayne@mel-law.com
dlellis@mel-law.com

***Counsel for Plaintiffs***