

**west virginia** department of environmental protection

Division of Water and Waste Management
601 57th Street SE
Charleston, WV  25304
Phone:  (304) 926-0470
Fax:     (304) 926-0488

Harold D. Ward, Cabinet Secretary
dep.wv.gov

## CONSENT ORDER
## ISSUED UNDER THE
## HAZARDOUS WASTE MANAGEMENT ACT
## WEST VIRGINIA CODE, CHAPTER 22, ARTICLE 18

TO:   Peoples Cartage, Inc.
       Attn.:  Joseph DeVirgilio, CSP, SMP, CIT
       2207 Kimball Road SE
       Canton, OH 44707

DATE:  December 15, 2025

ORDER NO.:  HW-25-005

### INTRODUCTION

This Consent Order is issued by the Director of the Division of Water and Waste Management (hereinafter "Director"), under the authority of West Virginia Code Chapter 22-18-1 et seq. to Peoples Cartage, Inc. (hereinafter "Peoples Cartage").

### FINDINGS OF FACT

In support of this Order, the Director hereby finds the following:

1. Peoples Cartage operates a warehouse and packaging facility located near Parkersburg, Wood County, West Virginia and has been assigned EPA ID No. WVR000507657.  The facility was recently acquired by Peoples Cartage and was formerly REO Processing West Virginia at the time of the last notification.

2. On July 28, 2020, West Virginia Department of Environmental Protection (WVDEP) personnel conducted an inspection of the facility in response to a fire that was reported to the WVDEP Spill Hotline.  During the investigation, it was determined that the fire occurred under a canopy behind a building where hazardous waste calcium hypochlorite had been stored.  The waste calcium hypochlorite had been moved outside, after a previous fire had occurred on July 4, 2020, inside the storage area of building four (4).  During the inspection, violations of the following sections of Code of Federal Regulations were observed and documented:

Promoting a healthy environment.

    a. 40 CFR 262.251 – The facility failed to operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to the environment.

    b. 40 CFR 262.13 – The facility failed to accurately determine its generator category based on the amount of hazardous wastes generated in a calendar month.

As a result of the aforementioned violations, Notice of Violation (NOV) No. 2007-589 was issued to REO Processing West Virginia.

3. On November 5, 2020, WVDEP and REO Processing West Virginia entered into Order No. HW-21-002. The Order was issued in response to REO Processing West Virginia's violations of the Code of Federal Regulations, which had been observed and documented during an inspection conducted on July 28, 2020.

4. On March 16, 2025, the WVDEP Spill Hotline received a report of a fire at the facility involving the combustion of calcium hypochlorite hazardous waste. As indicated on the spill report, the facility representatives had identified the responsible party as Total Distribution, Inc.

5. On March 17, 2025, WVDEP personnel conducted a Focused Compliance Inspection (FCI). During the inspection, it was observed and documented that there was a fire within the hazardous waste storage building (building seven (7)), where ignitable calcium hypochlorite floor sweepings (waste code D001) are accumulated. During the inspection, the following violations of the following sections of WV State Code and Code of Federal Regulations were observed and documented:

    a. 40 CFR 262.15(a)(4) – The facility stored a container holding hazardous waste that was open when not in use.

    b. 40 CFR 262.16(b)(6)(i)(C) – The facility failed to mark or label its containers of hazardous waste with the date upon which each period of accumulation begins.

    c. 40 CFR 262.16(b)(6)(i)(A) – The facility failed to display the words "Hazardous Waste" on storage containers of hazardous waste.

    d. 40 CFR 262.16(b)(8)(i) – The facility failed to operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to the environment.

    e. WV State Code 22-18-8(a) – The facility disposed of hazardous waste without a permit.

As a result of the aforementioned violations, Notice of Violation (NOV) No. 2503-584 was issued to Total Distribution, Inc.

6. On May 16, 2025, Peoples Cartage renotified on EPA's RCRAInfo website and thus changed their responsible party's name, for the aforementioned facility, from REO Processing West Virginia to Peoples Cartage, Inc.

7. On May 23, 2025, WVDEP received an email from a representative of Peoples Cartage that stated that the responsible party's name, for the aforementioned facility, should be updated to Peoples Cartage, Inc.

8. On June 4, 2025, the WVDEP Spill Hotline received a report of a fire at the facility involving the combustion of calcium hypochlorite hazardous waste. The facility reported that an unknown amount of calcium hypochlorite had been released into the atmosphere due to a fire igniting in a storage building. The cause of the fire was believed to be attributed to a chemical reaction occurring in the "floor sweep" buckets. The facility further stated that it was unknown which contaminant of the "floor sweep" material had caused the chemical reaction and the resulting fire.

9. On June 5, 2025, WVDEP personnel conducted a Focused Compliance Inspection (FCI). During the inspection, it was observed and documented that there was a fire within the hazardous waste storage building (building seven (7)), where ignitable calcium hypochlorite floor sweepings (waste code D001) are accumulated. During the inspection, the following violations of the following sections of WV State Code and Code of Federal Regulations were observed and documented:

    a. 40 CFR 262.16(b)(8)(i) – Peoples Cartage failed to operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to the environment.
    b. WV State Code 22-18-8(a) – Peoples Cartage disposed of hazardous waste without a permit.

   As a result of the aforementioned violations, Notice of Violation (NOV) No. 2506-586 was issued to Peoples Cartage.

10. On September 11, 2025, WVDEP personnel and representatives of Peoples Cartage met to discuss the terms and conditions of this Order.

11. On September 23, 2025, Peoples Cartage submitted a plan of corrective action (POCA) that outlined action items for how and when Peoples Cartage would achieve compliance with all pertinent laws and rules. The POCA was subsequently approved by WVDEP personnel.

**ORDER FOR COMPLIANCE**

Now, therefore, in accordance with West Virginia State Code 22-18-1 et seq., it is hereby agreed between the parties, and ORDERED by the Director:

1. Peoples Cartage shall immediately take all measures to initiate compliance with all pertinent laws and rules.

2. Upon the effective date of this Order, Peoples Cartage shall begin complying with the aforementioned approved plan of corrective action (POCA), dated September 23, 2025.

The POCA has been incorporated into and become part of this Order.  Failure to adhere to the approved POCA is a violation of this Order.

3. Because of Peoples Cartage's Code of Federal Regulations and WV State Code violations, Peoples Cartage shall be assessed a civil administrative penalty of forty-six thousand three hundred eighty dollars ($46,380) to be paid to the West Virginia Department of Environmental Protection for deposit in the Hazardous Waste Management Fund within thirty (30) days of the effective date of this Order.  Payments made pursuant to this paragraph are not tax-deductible for purposes of State or federal law.  **Payment shall include a reference to the Order No. and shall be mailed to:**

**Chief Inspector**
**Environmental Enforcement – Mail Code # 031328**
**WVDEP**
**601 57th Street SE**
**Charleston, WV 25304**

## OTHER PROVISIONS

1. Peoples Cartage hereby waives its right to appeal this Order under the provisions of West Virginia State Code 22-18-20.  Under this Order, Peoples Cartage agrees to take all actions required by the terms and conditions of this Order and consents to and will not contest the Director's jurisdiction regarding this Order.  However, Peoples Cartage does not admit to any factual and legal determinations made by the Director and reserves all rights and defenses available regarding liability or responsibility in any proceedings regarding Peoples Cartage other than proceedings, administrative or civil, to enforce this Order.

2. The Director reserves the right to take further action if compliance with the terms and conditions of this Order does not adequately address the violations noted herein and reserves all rights and defenses which he may have pursuant to any legal authority, as well as the right to raise, as a basis for supporting such legal authority or defenses, facts other than those contained in the Findings of Fact.

3. If any event occurs which causes delay in the achievement of the requirements of this Order, Peoples Cartage shall have the burden of proving that the delay was caused by circumstances beyond its reasonable control which could not have been overcome by due diligence (i.e., force majeure).  Force majeure shall not include delays caused or contributed to by the lack of sufficient funding.  Within three (3) working days after Peoples Cartage becomes aware of such a delay, notification shall be provided to the Director/Chief Inspector and Peoples Cartage shall, within ten (10) working days of initial notification, submit a detailed written explanation of the anticipated length and cause of the delay, the measures taken and/or to be taken to prevent or minimize the delay, and a timetable by which Peoples Cartage intends to implement these measures.  If the Director agrees that the delay has been or will be caused by circumstances beyond the reasonable control of Peoples Cartage (i.e., force majeure), the time for performance hereunder shall be extended for a period of time equal to the delay resulting from such

circumstances. A force majeure amendment granted by the Director shall be considered a binding extension of this Order and of the requirements herein. The determination of the Director shall be final and not subject to appeal.

4. Compliance with the terms and conditions of this Order shall not in any way be construed as relieving Peoples Cartage of the obligation to comply with any applicable law, permit, other order, or any other requirement otherwise applicable. Violations of the terms and conditions of this Order may subject Peoples Cartage to additional penalties and injunctive relief in accordance with the applicable law.

5. The provisions of this Order are severable and should a court or board of competent jurisdiction declare any provisions to be invalid or unenforceable, all other provisions shall remain in full force and effect.

6. This Order is binding on Peoples Cartage, its successors and assigns.

7. This Order shall terminate upon Peoples Cartage's notification of full compliance with the "Order for Compliance" and verification of this notification by WVDEP.


*Joseph DeVirgilio, CSP, SMS, CIT*

Joseph DeVirgilio, CSP, SMP, CIT
Senior Director – Safety, Quality, and
Regulatory Compliance
Peoples Cartage, Inc.

12/23/2025
_____
Date


Public Notice begin:

_____
Date


Public Notice end:

_____
Date


_____
Jeremy W. Bandy, Director
Division of Water and Waste Management

_____
Date

Peoples Cartage, Inc.                                    EPA ID No. WVR000507657

Photo Log [Page 1 of 5]



July 28, 2020 – The remaining calcium hypochlorite, after the fire that occurred on July 4, 2020.



March 17, 2025 – Building 7, the hazardous waste storage building, after the fire (on March 16, 2025).

Peoples Cartage, Inc.    EPA ID No. WVR000507657

Photo Log [Page 2 of 5]



March 17, 2025 – A three-gallon plastic bucket of Ca(OCl)$_2$ (calcium hypochlorite) floor sweepings properly labeled, but open.

Peoples Cartage, Inc.

EPA ID No. WVR000507657

Photo Log [Page 3 of 5]



March 17, 2025 – A group of 14 plastic buckets of hazardous waste observed without accumulation dates.

Peoples Cartage, Inc.                                    EPA ID No. WVR000507657

Photo Log [Page 4 of 5]



March 17, 2025 – Twelve buckets of hazardous waste, all of which were observed with only an indication of the hazard contained, and with bird droppings and dirt accumulation.

Peoples Cartage, Inc.                    EPA ID No. WVR000507657
                                         Photo Log [Page 5 of 5]



June 5, 2025, at 11:03 am – Building 7, the hazardous waste storage building, after the fire (on June 4, 2025).



June 5, 2025, at 11:04 am – 56 five-gallon plastic buckets containing slurry.



September 23, 2025

Chief Inspector
Environmental Enforcement – Mail Code # 031328
WVDEP
601 57th Street SE
Charleston, WV 25304

Re: Plan of Corrective Action Regarding Consent Order HW-25-005

Chief Inspector,

I am writing in response to Order No. HW-25-005 associated with EPA ID WVR000507657. In the Order referenced Peoples Cartage, Inc. (formerly REO Processing) was presented with multiple incidents and violations dating back to July 2020 for the facility located at 221 Airport Industrial Boulevard, Parkersburg, WV 26104. Please note that Peoples Cartage, Inc. did not acquire this operation until September 2024. Since that date there have been two incidents at the site. The following is a list of those violations and corrective actions taken.

Violations and Corrective Actions for March 17, 2025, Focused Compliance Inspection

1.  A. 40 CFR 262.15(a)(4)
    B. The facility stored a container holding hazardous waste that was open when not in use.
    Corrective Action – A review of the waste management plan was completed and updated to ensure compliance with applicable regulations. All staff were trained on the updated requirements and any deviation from the plan may be subject to disciplinary action.

2.  A. 40 CFR 262.16(b)(6)(i)(A)
    B. The facility failed to display the words "Hazardous Waste" on storage containers of hazardous waste.
    Corrective Action – A review of the waste management plan was completed and updated to ensure compliance with applicable regulations. All staff were trained on the updated requirements and any deviation from the plan may be subject to disciplinary action.

3.  A. 40 CFR 262.16(b)(6)(i)(C)
    B. The facility failed to mark or label its containers of hazardous waste with the date upon which each period of accumulation begins.
    Corrective Action – A review of the waste management plan was completed and updated to ensure compliance with applicable regulations. All staff were trained on the updated requirements and any deviation from the plan may be subject to disciplinary action.

4. A. 40 CFR 262.16(b)(8)(i)
   B. The facility failed to maintain and operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health or the environment.
   Corrective Action – The hollow concrete block building was taken down and replaced with poured concrete for better insulation and containment should another event take place. Additionally, the new structure was tied into a monitored alarm system that would immediately notify staff as well as the local fire department.

5. A. WVSC 22-18-8(a)
   B. The facility disposed of Hazardous Waste without a Permit.
   Corrective Action – A review of the waste management plan was completed and updated to ensure compliance with applicable regulations. All staff have been trained on the updated requirements and any deviation from the plan may be subject to disciplinary action.

Violations and Corrective Actions for June 5, 2025, Focused Compliance Inspection

1. A. 40 CFR 262.16(b)(8)(i)
   B. The facility failed to maintain and operate to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health or the environment.
   Corrective Action – Any floor sweep that is generated goes into a plastic bucket and checked with a thermal scan gun within 30 minutes to ensure there are no exothermic reactions.

2. A. WVSC 22-18-8(a)
   B. The facility disposed of Hazardous Waste without a Permit.
   Corrective Action – The site is currently reviewing the efficacy of elemental neutralization for this waste stream. The idea would be to add a neutralizing solution to any waste generated, filter out the solids for landfill and send the liquid to POTW or through NPDES.

Please note that while we did have a second incident, the number of findings associated with the Focused Compliance Inspection reduced. Peoples Cartage, Inc. takes the safety of our staff and the health of our environment very seriously. Should you have any questions or need any additional information, please feel free to reach me at (330) 453-3709 or at jdevirgilio@peoplesservices.com. Thank you for your time and consideration in this matter.

Sincerely,

*Joseph DeVirgilio CSP, SMP, CIT*

Joseph DeVirgilio, CSP, SMP, CIT
Senior Director of Safety, Quality, & Regulatory Compliance

# Hazardous Waste Base Penalty Calculation

(pursuant to 33CSR27-6.1)

**Responsible Party:** Peoples Cartage, Inc.    **EPA ID Number:** WVR000507657

**Generator Classification:** SQG

Enter FOF# and rate each finding as to Potential and Extent.

| | **Potential for Harm Factor** | **Factor Range** | FOF# | | | | | | | | | | | | |
| | | | **5a** | **5b** | **5c** | **5d, 9a** | **5e, 9b** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **1)** | | | | | | | | | | | | | | | |
| a) | Harm to RCRA Program | 1 to 3 | 1 | 1 | 1 | 3 | 3 | | | | | | | | |
| b) | Probability of Exposure | 0 to 3 | 1 | 1 | 1 | 3 | 3 | | | | | | | | |
| c) | Potential Seriousness of Contamination | 1 to 3 | 2 | 2 | 2 | 2 | 2 | | | | | | | | |
| | **Average Potential for Harm Factor** | | 1.3 | 1.3 | 1.3 | 2.7 | 2.7 | No | No | No | No | No | No | No | No |
| **2)** | **Extent of Deviation Factor** | **Factor Range** | | | | | | | | | | | | | |
| | Degree of Non-Compliance | 1 to 3 | 1 | 2 | 2 | 3 | 3 | | | | | | | | |

## Potential for Harm Factors

1a. - Harm to the RCRA Program

- All regulatory requirements are fundamental to the continued integrity of the RCRA Program

- Violations that undermine the statutory or regulatory purposes or procedures for implementing the RCRA program may have serious implications and merit substantial penalties.  Examples include but are not limited to: failure to notify as a generator, failure to respond to an info request, failure to prepare or maintain a manifest, and operating / disposal without a permit

1b. - Probability of Exposure - factors to be considered include but are not limited to: evidence of a release, evidence of waste mismanagement, and adequacy of provisions for detecting and preventing a release

1c. - Potential Seriousness of Contamination - factors to consider include but are not limited to quantity and toxicity of wastes (potentially) released, likelihood or fact of transport by way of environmental media (e.g. air and groundwater), and existence, size and proximity of receptor populations (e.g. local residents, fish, wildlife) and sensitive environmental media (e.g. surface waters and aquifers.)

**Note**: Rate as 1 for Minor, 2 for Moderate and 3 for Major.  Rate as 0 if it does not apply.

**Continue rating Findings of Facts (FOF) here, if necessary.  Otherwise, continue on Page 3.**

| | | | FOF# | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **1)** | **Potential for Harm Factor** | **Factor Range** | | | | | | | | | | | |
| a) | Harm to RCRA Program | 1 to 3 | | | | | | | | | | | |
| b) | Probability of Exposure | 0 to 3 | | | | | | | | | | | |
| c) | Potential Seriousness of Contamination | 1 to 3 | | | | | | | | | | | |
| | **Average Potential for Harm Factor** | | No | No | No | No | No | No | No | No | No | No | No |
| **2)** | **Extent of Deviation Factor** | **Factor Range** | | | | | | | | | | | |
| | Degree of Non-Compliance | 1 to 3 | | | | | | | | | | | |

| | | Extent of Deviation from Requirement | | |
|---|---|---|---|---|
| | | Major | Moderate | Minor |
| Potential for Harm to Human Health or the Environment | Major | $8,000 to $10,000 | $6,000 to $8,000 | $5,000 to $6,000 |
| | Moderate | $4,000 to $5,000 | $3,000 to $4,000 | $2,000 to $3,000 |
| | Minor | $1,500 to $2,000 | $1,000 to $1,500 | Up to $1,000 |

| FOF # | Potential for Harm | Extent of Deviation | Penalty | Multiple Factor | Base Penalty |
|---|---|---|---|---|---|
| 5a | Moderate | Minor | $2,330 | 1 | $2,330 |
| 5b | Moderate | Moderate | $3,330 | 1 | $3,330 |
| 5c | Moderate | Moderate | $3,330 | 1 | $3,330 |
| 5d, 9a | Major | Major | $9,340 | 2 | $18,680 |
| 5e, 9b | Major | Major | $9,340 | 2 | $18,680 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| 0 | FALSE | FALSE | FALSE | 1 | $0 |
| **Total Base Penalty** | | | | | $46,350 |

# <u>Penalty Adjustment Factors</u>
(pursuant to 33CSR27-6.2)

**Penalty Adjustment Factors**

6.2.b.1 - Good faith efforts to comply or lack of good faith - 10% decrease to 10% increase

6.2.b.2 - Degree of Willfulness and / or Negligence - 0% to 30% increase

6.2.b.3 - Cooperation with the Secretary  - 0% to 10% decrease

6.2.b.4 - History of Non-Compliance - 0% to 100% increase -
based upon review of last three (3) years - Warning = maximum of 5% each,
N.O.V. = maximum of 10% each, previous Order = maximum of 25% each

6.2.b.5 - Ability to pay a civil administrative penalty - 0% to 100% decrease

6.2.b.6 - Economic Benefit of non-compliance

6.2.b.7 - Staff Investigative Costs

6.2.b.8 - Other relevant factors determined on a case-by-case basis

# Base Penalty Adjustments

(pursuant to 33CSR27-6.2)

| Penalty Adjustment Factor | % Increase | % Decrease | Adjustments |
|---|---|---|---|
| 6.2.b.1 - Good Faith - Increase | | | $0 |
| 6.2.b.1 - Good Faith - Decrease | | 10 | ($4,635) |
| 6.2.b.2 - Willfulness and/or negligence | 20 | | $9,270 |
| 6.2.b.3 - Cooperation with the Secretary | | 10 | ($4,635) |
| 6.2.b.4 - Compliance/noncompliance history | | | $0 |
| 6.2.b.5 - Ability to Pay an Administrative Penalty | | | $0 |
| 6.2.b.6 - Economic Benefit (flat monetary increase) | $0 | | $0 |
| 6.2.b.7 - Staff Investigative Costs (flat monetary increase) | | | $0 |
| 6.2.b.8 - Additional Other Factors - Increase (flat monetary increase) | | | $0 |
| 6.2.b.8 - Additional Other Factors - Decrease (flat monetary decrease) | | | $0 |
| Public Notice Cost (flat monetary increase) | $30 | | $30 |
| | | | |
| **Penalty Adjustments** | | | **$30** |
| **Penalty =** | | | **$46,380** |

| Estimated Economic Benefit Item | Estimated Benefit ($) |
|---|---|
| Monitoring & Reporting | |
| Installation & Maintenance of Pollution Control Equipment | |
| O&M expenses and cost of equipment/materials needed for compliance | |
| Permit Application or Modification | |
| Competitive Advantage | |
| **Estimated Economic Benefit** | **$0** |
| **Comments:** Economic benefit not warranted. | |